# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1686 | **DATE** | 10/15/2003 |
| **CASE TITLE** | JOSEPH ENRIGHT vs. ACCURATE TRANSMISSIONS, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant Accurate's Motion for Summary Judgment, Plaintiff's Enright's Motion to Strike, and Defendant Accurate's Motion to Bar (docs. #14, 22, and 2

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's Motion for Summary Judgment is DENIED in part and GRANTED in part. Plaintiff's Motion to Strike [#22] is DENIED. Defendant's Motion to Bar [#23] is DENIED. Enter Memorandum Opinion and Order. Joint pretrial order to submitted in triplicate on 11/5/03 at 9:45 a.m. Parties are advised that a trial schedule will be set at the next court date.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 17 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 29 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| JHC | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH ENRIGHT, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 01 C 1686 |
| ) | |
| ACCURATE TRANSMISSIONS, INC. ) | The Honorable William J. Hibbler |
| ) | |
| Defendant. ) | |

DOCKETED
OCT 17 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Joseph Enright filed this action against defendant Accurate Transmissions, Inc. (Accurate), alleging that Accurate violated the American with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, and the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* Accurate has now filed for summary judgment. Additionally, Accurate has filed a motion to bar Enright's expert, and Enright has filed a motion to strike portions of Accurate's statement of material facts and corresponding exhibits. For the following reasons, Accurate's motion for summary judgment is **denied** in part and **granted** in part; Accurate's motion to bar Enright's expert is **denied**; and Enright's motion to strike is **denied**.

I. Background

Plaintiff Joseph Enright suffers from Lupus, an autoimmune disorder effecting the central nervous system. In December of 1997, Richard Kuempal, a childhood friend and president of Accurate, offered Enright a position at Accurate. Kuempal was aware of Enright's medical condition prior to offering him the position. Enright accepted Kuepal's offer and began in January of 1998 as manager of Accurate's warranty division. The position involved frequent client contact

1

over the telephone, as Enright was responsible for reviewing and resolving all customer warranty claims. Kuempal testifies that Enright's performance was frequently unacceptable as Enright did not always return customer phone calls in a timely fashion. In support of his criticisms, Kuempal submits various evidence documenting Enright's performance including a written performance review, a warning letter, and an exhibit compiling customer complaints.

Enright's first review came in February 1998, four weeks after he started working for Accurate. Kuempal claims that he discussed Enright's failure to return calls during this initial review. Six months later, in August of 1998, Enright had his second review. As part of this review, Kuempal gave Enright written notes requesting he return customer calls in a more timely fashion. Other than this deficiency, the overall review was favorable and resulted in Enright obtaining a significant salary raise. The next evidence relating to Enright's performance is a warning letter dated January 27, 1999. The letter explained Accurate's concerns and required Enright to improve within thirty days. Accurate admits that Enright's performance did improve after the warning letter, and that Enright received a generally positive annual review on February 25, 1999. Besides the performance evaluations, Accurate submits a small collection of customer complaints lodged during Enright's tenure. A number of these complaints name Enright specifically.

After the February 25, 1999 annual review, Enright continued his duties without incident until September 30, 1999. On this day, Enright experienced chest pains and shortness of breath while at work. This prompted Kuempel's wife, who also worked at Accurate, to drive Enright to his doctor who then admitted Enright to a local hospital for observation. After his release a few days later, Enright returned to work. Within an hour of his return, another Accurate manager, Steve Shafer, called Enright into his office. According to Enright, Shafer explained that Accurate had

decided to fire Enright because Accurate management believed that the stress of Enright's job was not good for his medical condition. Enright also claims that Shafer did not offer him another position at Accurate or offer any accommodation whatsoever. Accurate disputes that Enright's failing health motivated their employment decision. Rather, Accurate claims that Enright's poor job performance was the sole motivating factor behind the decision to terminate Enright. But at least one Accurate manager, Mary Kuempel, testified that concerns for Enright's health may have prompted Accurate's actions.

Following his termination, Enright filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging ADA discrimination. On January 21, 2001, the EEOC gave Enright the right to sue and Enright timely brought the present proceedings. Accurate now moves for summary judgment. Accurate argues that Enright has failed to present evidence demonstrating that he is "disabled" under the ADA. Accurate also argues that Enright has failed to rebut Accurate's legitimate, non-discriminatory reasons for terminating Enright's employment. Regarding Enright's ERISA claim, Accurate argues that Enright cannot prove that Accurate fired Enright with the specific intent to interfere with Enright's ERISA rights.

The parties have also filed motions attacking each other's evidence. Enright asks the Court to strike portions of Accurate's submissions claiming that Accurate's evidence is unsupported, speculative, and slanderous. Accurate motions the Court to bar Enright's vocational expert, citing problems with the expert's qualifications and methodology. The Court will address these latter motions first.

## II. Discussion

A. *Enright's Motion to Strike*

Enright asks the Court to strike portions of Accurate's statement of material facts, memorandum of law, and supporting exhibits. Enright claims that Accurate presents unsupported

3

testimony regarding Accurate's insurance agent, speculative evidence regarding Accurate's "problem files" before, during, and after Enright's tenure, and slanderous testimony about Enright's vocational expert. Enright's motion is unnecessary. The Court is fully capable of parsing through the Accurate's factual statements and supporting exhibits and deciding which facts should be considered and which should not. *Stark v. PPM American*, No. 01 C 1494, 2002 WL 31155083, at * 2 (N.D.Ill. Sept. 26, 2002). To the extent any factual assertion has been inadequately or improperly supported, such assertions will not be incorporated into the facts taken to be true for purposes of summary judgment. *Ogborn v. United Food and Commercial Workers, Local No. 881*, No. 98 C 4623, 2000 WL 1409855, at *3 (N.D.Ill. Sept. 25, 2000). Accordingly, Enright's motion is denied.

B. *Accurate's Motion to Bar Enright's Vocational Expert*

Accurate claims that the testimony of Enright's vocational expert is irrelevant and unreliable and therefore inadmissible. Enright has retained a vocational expert, Mr. Brethauer, who testifies about the effects of Enright's perceived disability. Mr. Brethauer opines that if Accurate perceived Enright as not being able to handle job-related stress, then Enright would be substantially limited in his ability to find similar employment. Accurate argues that Brethauer's opinion is not based upon sufficient facts or data and is not the product of reliable principles and methods.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or determine the fact in issue, a witness qualified as an expert by knowledge, skill experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702. Expert testimony must be both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999). The testimony is relevant if the testimony "assists the trier of fact in understanding the evidence or determining a fact," and the testimony is reliable if the "reasoning or methodology underlying the

4

testimony is scientifically valid." *Daubert*, 509 U.S. at 590-91; *United States v. Hall*, 165 F.3d 1095, 1101 (7th Cir. 1999).

Accurate argues that Brethauer's testimony is irrelevant because Enright's claimed disability, the inability to handle job-related stress, cannot constitute a disability under the ADA. Accordingly, Accurate argues that Brethauer's opinions are irrelevant because they will not help prove Enright's ADA claim. Accurate's argument is without merit as it ignores cases such as *Emerson v. Northern States Power Co.*, 256 F.3d 506, 510, 512 (7th Cir. 2001), which allowed an employee's ADA claim based on a perceived inability to handle job-related stress. Accurate also argues that Brethauer's opinions are irrelevant because expert testimony is not needed to understand whether someone feels stress. This argument is misplaced as Brethauer's opinions are not offered to prove that Enright did or did not experience job-related stress, but rather to determine the effect of Accurate's perception that Enright could not handle job-related stress.

Accurate next argues that Brethauer's testimony is unreliable. Accurate first claims that the testimony is not scientifically valid because there is no recognized definition of stress. But Accurate does not explain why this undermines Brethauer's opinions. Nor does Accurate address the fact that the Seventh Circuit had no difficulty discussing workplace stress in the absence of a uniform definition. *See Emerson*, 256 F.3d at 512. Accurate also claims that Brethauer's report is unreliable because only portions of his methodology have been submitted to peer review. This, by itself, does not render an expert report unreliable. The *Daubert* inquiry is a flexible one, where the court may consider a variety of factors. Whether the expert's methods have been submitted to peer review is only one of these factors. *Id.* at 593-94. Moreover, the method Brethauer employs - the transferable skills analysis - has been deemed reliable. *See DePaoli v. Abbott Labs.*, 140 F.3d 668, 670 (7th Cir. 1998).

Lastly, Accurate attacks Brethauer personally. Accurate argues that Brethauer's testimony was

5

excluded in another case on *Daubert* grounds and should therefore be excluded here. *See United States Equal Employment Opportunity Comm'n v. Rockwell Int'l Corp.*, 60 F.Supp. 2d 791 (N.D.Ill. 1999). *Rockwell* is readily distinguishable from the case at hand. In *Rockwell*, the district court found that Brethauer failed to review the claimants' individual depositions, received inappropriate input from the plaintiff's attorney, admitted to finding some of the data incomplete and relied on data not usually relied upon by experts in the field. *Rockwell*, 60 F. Supp. 2d at 797-798. None of these deficiencies are claimed here. Rather, the record reveals that Brethauer reviewed depositions, consulted various professional sources, and performed a transferable skills analysis that considered Enright's position and relevant job markets. As the Court finds that Brethauer's report is neither irrelevant nor unreliable, Enright's motion to bar is denied.

C. *Accurate's Motion For Summary Judgment*

Accurate argues that Enright cannot, as a matter of law, establish that he is disabled under the ADA. Accurate also argues that even if Enright could establish an ADA disability, Enright has failed to rebut Accurate's non-discriminatory reasons for terminating Enright. Regarding Enright's ERISA claim, Accurate argues that Enright has failed to offer evidence demonstrating that Accurate acted with the required *specific intent* to interfere with Enright's ERISA rights.

1. Enright's ADA Claim

The ADA provides that no employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . ." 42 U.S.C. § 12112(a). Enright can establish actionable discrimination in two ways. First, under the direct method, Enright "may present direct or circumstantial evidence that [Accurate's] employment decision was motivated by [Accurate's] discriminatory animus." *Bellaver v. Quanex*, 200 F.3d 485, 492 (7th Cir. 2000). Second, Enright may use the burden shifting method set forth in *McDonnell*

6

*Douglas Corporation v. Green*, 411 U.S. 792 (1973) to indirectly prove that Accurate intentionally discriminated against him. *Leisen v. City of Shelbyville*, 153 F.3d 805, 807 (7th Cir. 1998). Accurate argues that Enright cannot succeed under either method.

      a.    *Direct Method*

Before considering Enright's direct evidence of discrimination, the Court must address a threshold issue – whether Enright is "a qualified individual with a disability" within the meaning of the ADA. Because the ADA only covers "qualified individuals with disabilities," the burden rests with Enright to prove that he is disabled within the meaning of the statute. *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1453-54 (7th Cir. 1995).

While Accurate does not challenge that Enright was a "qualified individual," it vigorously disputes that Enright has a "disability" under the ADA. To demonstrate his disability, Enright may show either "(A) a physical or mental impairment that substantially limits one or more of the major life activities of the individual; (B) a record of such an impairment, or (C) being regarded as having such an impairment." 42 U.S.C. sec. 12102(2); *Hoeller v. Eaton Corp.*, 149 F.3d 621, 624-25 (7th Cir. 1998). Enright has elected to base his claim on the definition's third prong.

The "regarded as" prong is intended to provide a remedy for discrimination based on misperceptions about the abilities of impaired persons. *Krocka v. City of Chicago*, 203 F.3d 507, 513-514 (7th Cir. 2000). To make out a claim under the "regarded as" prong, "it is necessary that a covered entity entertain misperceptions about the individual." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). These misperceptions may take the form of believing "either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment, when, in fact, the impairment is not so limiting." *Id.* Accurate's alleged perceptions fall

7

into the latter category – this is, Enright claims that Accurate regarded his physical impairment as substantially limiting his ability to work when, in fact, it was not so limiting. While Accurate acknowledges that it regarded Enright as physically impaired, Accurate disputes that it regarded Enright's physical impairment as *substantially limiting* one of Enright's *major life activities*.

Accurate first argues that the only life activity implicated by Enright's claim is "working" and that the Supreme Court's recent decision in *Toyota Motor Mfg., Kentucky., Inc. v. Williams*, 534 U.S. 184 (2002) decided that working should not be considered a major life activity. *Toyota* did not go that far. The *Toyota* Court was concerned with the major life activity of "performing manual tasks," not "working." *Id.* at 201. While it is true that the Court recognized the conceptual difficulties inherent in the argument that working could be a major life activity, it was careful not to decide this difficult question. *Id.* This Court therefore declines Accurate's invitation to depart from established Seventh Circuit precedent that consistently regards "working" as a major life activity. *See, e.g., Skorup v. Modern Door Corp*, 153 F.3d 512, 514-15 (7th Cir. 1998); *Patterson v. Chicago Ass'n for Retarded Children*, 150 F.3d 719, 725-26 (7th Cir. 1998); *Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 630 (7th Cir. 1998).

With respect to the major life activity of working, "substantially limits" mean significantly restricts the employee's ability to perform a class of jobs or broad range of jobs in various classes. *Byrne v. Board of Educ., Sch. of West Allis-West Milwaukee*, 979 F.2d 560, 567 (7th Cir. 1992). Thus, to overcome Accurate's summary judgment motion, Enright must present evidence to create a question of material fact as to whether Accurate believed that his impairments "substantially limit[ed] employment generally." *Skorup*, 153 F.3d at 514-15.

Accurate argues that Enright cannot carry this burden because Enright's evidence only

8

demonstrates that Accurate at most regarded Enright as incapable of performing the specific duties of his particular job. Accurate's position is unconvincing for two reasons. First, Enright claims that upon discovering the extent of his physical impairment, Accurate did not offer Enright another position or propose any accommodation whatsoever. If Enright allegations are taken as true, the fact that Accurate regarded Enright as unable to perform any job within Accurate at least raises a genuine issue of material fact as to whether Accurate perceived Enright as unable to perform a class or broad range of jobs. *Coleman v. Keebler Co.*, 997 F. Supp. 1102, 1115 (N.D.Ind. 1998); *see also Best v. Shell Oil Co.*, 107 F.3d 544, 548 (7th Cir. 1997). Enright also argues that Accurate believed that Enright's medical condition prevented him from handling job-related stress. To illustrate the effect of this perception, Enright offers testimony of a vocational expert who concludes that Accurate's alleged perception would foreclose Enright from eighty-two percent of the jobs utilizing similar training and skills within his geographic area. If correct, this conclusion certainly appears to "substantially limit" Enright's employment options. Accordingly, the Court finds that Enright has raised a dispute of material fact whether Accurate considered Enright substantially restricted in his ability to perform a broad range of jobs, and this is precisely what Enright must show to prove that Accurate regarded him as disabled.

2.  *Evidence of Discrimination*

But simply establishing that Accurate harbored discriminatory perceptions is not enough to overcome Accurate's motion. Rather, Enright must also demonstrate that a dispute of material fact exists whether Accurate acted on its perceptions. Enright may offer either direct evidence, circumstantial evidence, or a combination of both to demonstrate actionable discrimination. *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994).

Enright presents little direct evidence of discrimination, other than Schafer's alleged comment that he was firing Enright because the stress level of job was not good for his health. Standing alone, this isolated (and disputed) comment is probably not enough. But it is not true that to get over the hurdle of summary judgment a plaintiff must produce the equivalent of an admission of guilt by defendant. All that is required is evidence from which a rational tier of fact could reasonably infer that the defendant had fired the plaintiff because the latter was a member of a protected class. *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 658 (7th Cir. 1991) (en banc). Here, the particularly suspicious timing of Enright's termination provides the necessary inference of intentional discrimination. Enright claims that he was terminated within an hour of his return to work from the hospital. Such a telling temporal sequence can indicate a causal link reflecting an employer's discriminatory motivations. *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998). Also, Accurate admits that no specific aspect of Enright's job performance precipitated their decision to fire Enright. From this admission, a trier of fact could reasonably conclude that Enright's deteriorating physical condition provided the impetus to fire Enright and not Accurate's purported desire to rid themselves of a poorly performing employee. Accordingly, the Court finds that Enright has presented sufficient direct evidence of discrimination to raise a dispute of material facts as to whether Accurate fired Enright because of his perceived disability. Accurate's motion is therefore denied.[1]

2. *Enright's ERISA Claim*

Enright also claims that Accurate violated ERISA when it terminated his employment. Section 510 of ERISA provides, in pertinent part:

---

[1] Because the Court has determined that a dispute of material fact exists under the direct method of proving discrimination, the Court need not analyze Enright's claim under the indirect method of establishing ADA discrimination.

10

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for the purposes of interfering with the attainment of any right to which such participant may become entitled under the plan. . . . .

29 U.S.C. § 1140. In interpreting the above provision, the Seventh Circuit has determined that an employee must show that the employer acted with the *specific intent* to interfere with the employee's ERISA rights. *Teumer v. General Motors Corp.*, 34 F.3d 542, 550 (7th Cir. 1994); *Meredith v. Navistar Int'l Transp. Co.*, 935 F.2d 124, 126 (7th Cir. 1991). Additionally, although Enright is not required to prove that the interference with this ERISA rights was the sole reason for his discharge, *Salus v. GTE Directories Service Corp.*, 104 F.3d 131,138 (7th Cir. 1997), Enright bears the burden of establishing that his loss of benefits was not a "mere consequence" of his dismissal. *Meredith*, 935 F.2d at 127.

Enright offers scant evidence to demonstrate Accurate's specific intent. Enright claims that Mary Kuempal reported Enright's Lupus to Accurate's insurance agent because Enright's medical treatment represented a significant percentage of Accurate's medical expenses. From these facts, Enright extrapolates that Accurate fired him because Enright's deteriorating health compromised Accurate's ability to secure reasonably-priced health insurance. Even when Enright's evidence is viewed in the most favorable light possible, it fails to raise the necessary inference of Accurate's *specific intent* to interfere with Enright's ERISA rights. The only reasonable conclusion that a trier of fact could draw from Enright's evidence, or lack thereof, is that Enright's loss of benefits was a mere consequence of his dismissal rather than the result of Accurate's specific intent to interfere with his ERISA rights. Accordingly, as Enright's evidence fails to raise a genuine issue of material fact regarding whether Accurate's intended to specifically interfere with Enright's ERISA rights, Accurate's motion for summary judgment is granted.

III. Conclusion

Enright's motion to strike is **denied**. Accurate's motion to bar Enright's vocational expert is also **denied**. Accurate's motion for summary judgment is **denied** as to Enright's ADA claim because a dispute of material fact exists whether Accurate terminated Enright because of his disability. With regard to Enright's ERISA claim, however, Accurate's motion for summary judgment is **granted** as Enright has not produced any evidence that Accurate specifically intended to interfere with Enright's ERISA rights.

IT IS SO ORDERED

10/15/03

William J. Hibbler
United States District Court